UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSHUA STURMAN, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:22-cv-995 |
| v. | |
| HIPR PACSOFT TECHNOLOGIES, INC., HUDSON, a Professional Corporation. t/d/b/a Hudson Legal, BING-YU HSIEH a.k.a. Winston LB Shay and VICTORIA CLAIRE CHEN a.k.a. Pi-Hsueh Chen, | |
| Defendants. | |

**COMPLAINT AND JURY DEMAND**

A. *Preliminary statement*

1. The plaintiff Joshua Sturman brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* to recover lost wages and other relief due to retaliatory termination of his employment. A jury trial is demanded.

B. *Jurisdiction and venue*

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. Venue is proper under 28 U.S.C. § 1391.

C. *The parties*

3. The plaintiff is an adult individual who resides in Millvale, Pennsylvania (Allegheny County).

4. The defendant HIPR Pacsoft Technologies, Inc. ("HIPR"), is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. This defendant maintained a place of business at 437 Grant Street, Suite 1020, Pittsburgh, PA 15219 (Allegheny County) and has employees in this district.

5. HIPR is a staffing and technology company that provides paralegals and other support staff to North America Immigration Law Group and maintains the firm's case management and citation analytics software.

6. The defendant Hudson, a Professional Corporation, t/d/b/a Hudson Legal ("Hudson"), is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. This defendant's headquarters is located at 100 Phoenix Drive, No. 311, Ann Arbor, MI 48108.

7. Hudson is a staffing firm providing lawyers and paralegals to North America Immigration Law Group.

8. At all times material, HIPR and Hudson were employers covered by the FLSA.

9. The defendant Bing-Yu Hsieh a.k.a. Winston LB Shay ("Shay") is an adult individual who, upon information and belief, resides in Seattle Washington. Shay is an owner and/or principal of HIPR. Shay exercises substantial control of the terms and conditions of the work of the employees of HIPR and Hudson. For example, he manages the work of the employees, and exercises direct control over the terms and conditions of the employees' employment, including determining the wages they are paid, the hours that they work (i.e., their schedules) and their job duties and responsibilities. He also formulates, executes and maintains the policies and procedures for the business and its employees. He also is responsible for the hiring, discipline and firing of employees.

10. The defendant Victoria Claire Chen a.k.a. Pi-Hsueh Chen ("Chen") is an adult individual who, upon information and belief, resides in California. Shay and Chen are married. Chen is an owner and/or principal of Hudson. Chen exercises substantial control of the terms and conditions of the work of the employees of HIPR and Hudson. For example, she manages

the work of the employees, and exercises direct control over the terms and conditions of the employees' employment, including determining the wages they are paid, the hours that they work (i.e., their schedules) and their job duties and responsibilities. She also formulates, executes and maintains the policies and procedures for the business and its employees. She also is responsible for the hiring, discipline and firing of employees.

11. HIPR and Hudson (collectively, the "Defendant Entities") have interrelated operations, common ownership and management, centralized control of labor relations, common ownership and financial controls and, therefore, the Defendant Entities are sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single and/or joint employer for purposes of this action. Further, Shay and Chen (the "Individual Defendants") are employed and/or provide work for both of the Defendant Entities and manage their employees. References to "the defendants" in this complaint refer to both the Defendant Entities and the Individual Defendants.

12. At all times relevant, the Defendant Entities acted by and through their agents, servants and employees, each of whom acted, at all times relevant, in the scope of their employment with and for the benefit of the Defendant Entities.

D.  ***Factual background***

13. HIPR hired the plaintiff as a Legal Writer on or about on or about May 31, 2019 and he started working in mid-July 2019. The plaintiff was promoted to RFE (Request for Evidence) Writer in approximately March 2020. As detailed below, HIPR terminated the plaintiff's employment on October 29, 2021 in retaliation for the plaintiff raising issues about not being paid properly for overtime work.

14. At all times relevant, the claimant was supervised by and reported to management staff of both HIPR and Hudson. These individuals had supervisory control over the claimant and assigned his tasks on a daily basis.

15. Further, both HIPR and Hudson reserved the ability to terminate the plaintiff's employment for any reason.

16. At all times relevant, the plaintiff was employed by both HIPR and Hudson and both were the plaintiff's employer.

17. At the outset of his employment and continuing through approximately March 2020, the plaintiff worked at the Defendant Entities' office in Pittsburgh. As a result of the pandemic that gripped the nation at the time, the plaintiff as well as other employees started working from home. The plaintiff continued to work from home until his termination.

18. The plaintiff was a non-exempt employee. He did not have any management responsibilities and did not manage, perform scheduling, or oversee the work of employees or any other management functions. He had no authority regarding the hiring, termination or evaluation of employees and did not perform supervisory functions. He did not make decisions for the Defendant Entities related to operating its businesses, such as entering into binding contracts, managing the affairs of the company or any fiscal matters.

19. At all times material, the Defendant Entities agreed to pay the plaintiff an hourly wage based upon the number of hours he worked and was obligated to record in a proper, accurate and complete fashion all time worked. Specifically, the hourly wage that the Defendant Entities agreed to pay the plaintiff was $19.23 per hour.

20. Further, the Defendant Entities paid a bonus for "boost projects" (typically $150.00 to $200.00 depending on the value of the project as determined by management). Boost

projects were additional work assignments that consisted of part or all a petition, RFE response or set of letters of recommendation associated with a particular client.

21. The Defendant Entities were obligated to pay the plaintiff 1.5 times his hourly rate calculated as his hourly rate plus his bonus rate divided by 40 hours for all hours worked in excess of 40 hours per week.

22. The plaintiff regularly accepted boost projects and worked overtime from time to time.

23. The plaintiff found that there were many tensions between management and the employees that persisted throughout his employment.  Management was not communicative with employees and was not forthcoming or truthful about many aspects of the business.  Further, management arbitrarily demoted people, treated employees dismissively and changed work responsibilities with little or no notice.

24. The bonus payments for the boost projects were not paid during the payroll period in which the work was performed and were typically paid in later payroll periods.

25. On approximately September 17, 2021, the plaintiff contacted the U.S. Department of Labor Wage and Hour Division ("DOL") to file a complaint regarding the late-paid bonuses.  The DOL intake person asked questions about the mode and method by which bonus payments were calculated and paid and whether the plaintiff and similarly situated employees worked overtime.

26. The plaintiff learned that the Defendant Entities were not accurately calculating his overtime rate.  The Defendant Entities were paying him overtime based on his hourly rate only; they did not include his bonus pay (divided by 40 hours).  In other words, the plaintiff was paid 1.5 of his hourly rate only, which did not account for the bonus payments.

27. As a result of this intake meeting, the plaintiff filed a complaint with the U.S. DOL on or around September 17, 2021 asserting that the Defendant Entities were improperly calculating his and similarly situated employees' overtime wages. Further, he asserted that the Defendant Entities were classifying some workers as "independent contractors" instead of employees and paying them on a Form 1099 instead of a Form W-2.

28. On Thursday, October 14, 2021, the DOL provided the Defendant Entities with the complaint. The DOL investigator advised the plaintiff of this fact on Monday, October 18, 2021.

29. On Friday, October 15, 2021, the plaintiff took a sick day and did not work.

30. On Monday, October 18, 2021, the plaintiff went to start his work day and found that he had been locked out his work account. Further, he could not log in to his email or time clock app to "punch in". The plaintiff immediately suspected that the defendants had learned that he was the one who had filed the DOL complaint and were retaliating against him for doing so. Although he filed with the DOL "anonymously", it was not a secret that he was the one who had initiated the action.

31. The plaintiff called the receptionist for the Defendant Entities several times on October 18, 2021 to find out what was wrong, but no one picked up and no one called him back.

32. On October 18, 2021, a co-worker told the plaintiff that Shay told a team leader that the plaintiff had been "locked out" for "hacking" into the Defendant Entities' computer system.

33. On Tuesday, October 19, 2021, the plaintiff received an email from "Payroll Inquires" (payroll@hudson.com), stating, in pertinent part, as follows:

> *This letter is to inform you that you are being placed on unpaid administrative leave pending an investigation of the recent download activity of Company*

> *documents. Confidential company documents include all documents containing client information, as well as confidential and proprietary documents developed for internal use only that include processes and procedures developed exclusively for use by employees to provide services to clients.*
>
> *Company logs reflect that you have engaged in significant downloading of company documents during the past 3 months. For example, on August 24, 2021, our records reflect that you downloaded 687 company documents at 11:32:39 a.m. (please see attached):*
>
> | User | Date | Downloads |
> |---|---|---|
> | jsturman@hudsonpc.com | August 24, 2021, 11:32:39 AM CDT | 687 |
>
> *Internal company documents are company property and should not be downloaded to your personal PC unless it is necessary to finish your work. Our firm has a professional responsibility to maintain the confidentiality of client information. As a company, we take these responsibilities seriously.*
>
> ***The investigation will be thorough and conducted promptly****. As a reminder, HIPR maintains an anti-retaliation policy that prohibits retaliation against employees participating in an investigation. You are expected to cooperate with the investigation and not to engage in retaliation against other employees participating in the investigation.* ***We will contact you to schedule an interview regarding our concerns.*** *It may also be necessary as part of the investigation to have your electronic devices examined by a forensic specialist to recover confidential and proprietary company information and documents.* ***The company will be relying on the results of the investigation to make decisions with respect to your continued employment, as well as potential legal recourse to recover its confidential and proprietary information.***

Emphasis supplied.

34. The plaintiff had legitimate, work-related reasons for downloading the files at issue and had not used them for any improper purpose.

35. After receiving the email on October 19, 2021, the plaintiff made repeated attempts to contact management to discuss the situation. His calls were not forwarded to the relevant parties. Receptionists refused to connect the plaintiff with Shay, Chen or anyone else in Human Resources.

7

36. The plaintiff did not hear from anyone on Tuesday, October 19 or Wednesday, October 20. On Thursday, October 21, the plaintiff again made repeated attempts to contact management. Again, his calls were not forwarded to the relevant parties. The plaintiff again called the receptionist for the Defendant Entities but was not put through to Shay, Chen or anyone else.

37. On October 22, 2021, the plaintiff traveled to Ann Arbor, Michigan to speak to Human Resources in person and to participate in a union protest regarding ongoing attempts to unionize the workforce of the Defendant Entities. Human Resources refused to meet with the plaintiff and called security.

38. No one from the Defendant Entities contacted the plaintiff to conduct an interview or to otherwise discuss the allegations raised in the October 19, 2021 email/letter.

39. On October 29, 2021, the plaintiff received an email from "Payroll Inquires" (payroll@hipr.com) terminating his employment. In pertinent part, the email stated as follows:

> *On October 18th, you were placed on administrative leave pending investigation of unusual download activity from your HIPR google drive access to your personal PC. ...*
>
> *...*
>
> *As an employee you had access to confidential information through the Company google drive for work purposes only. Employees are prohibited from copying or downloading confidential Company documents to their personal PC or other electronic devices. Despite the clear terms of the policy, on August 24, 2021 you downloaded 687 confidential Company documents to your personal PC without authorization or a business reason for downloading the documents. The documents are all available to you on the Company google drive for your use during the work day to perform your duties. This is one example of improper download activity by you and not an exhaustive list of confidential documents downloaded by you without authorization for same.*
>
> ***The investigation of the download activity has been completed***. ***Your employment is terminated effective immediately***. *...*

Emphasis supplied.

40. The reason given by the Defendant Entities for the plaintiff's termination was merely a pretext. First, despite the Defendant Entities' representation that the investigation would be "thorough" and would involve an interview with the plaintiff (which he was more than happy to do), no one ever contacted the plaintiff to find out whether or why he had downloaded the files in question. Second, the plaintiff had a legitimate business reason for downloading the files at issue, which the Defendant Entities never attempted to ascertain. Third, the plaintiff did not disclose or disseminate any of the Defendant Entities' confidential information improperly and, again, the Defendant Entities did not bother to make any such determination. Fourth, the files at issue were downloaded in August 20221, two months before the issue was raised. The Defendant Entities knew or should have known about this download at the time that it happened but never brought it up until just three business days *after* it had learned that the plaintiff had filed a complaint with the DOL.

41. The Defendant Entities and the Individual Defendants terminated the plaintiff's employment in retaliation for the plaintiff's complaint to the DOL about not receiving overtime pay.

42. The DOL subsequently determined that the Defendant Entities had failed to properly calculate and pay overtime and the Defendant Entities entered into an agreement with the DOL to make requisite payments to the Defendant Entities' Pennsylvania employees.

### FIRST CAUSE OF ACTION
### Fair Labor Statndards Act, 29 U.S.C. § 215
### Retaliation

43. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

44. The plaintiff engaged in statutorily protected conduct under the FLSA by filing a good faith and bona fide complaint with the DOL regarding the Defendant Entities' failure to

compensate him and similarly situated employees for overtime work, not being paid time-and-a-half for overtime hours worked and for the Defendant Entities misclassifying employees as "independent contractors".

45. The Defendant Entities terminated the plaintiff's employment in retaliation for engaging in statutorily protected conduct under the FLSA.

46. The Individual Defendants are personally liable under the FLSA because they were personally involved with the day-to-day operation of the Defendant Entities, including being responsible for the terms and conditions of employment for the plaintiff, including his compensation, scheduling and work duties. The Individual Defendants were also responsible for instituting, maintaining, executing and perpetuating the unlawful payroll practices described above. Finally, they made the decision to terminate the plaintiff's employment in retaliation for engaging in statutorily protected conduct under the FLSA.

47. As a result of the Defendant Entities' and the Individual Defendants' retaliatory conduct, the defendants violated the FLSA and caused the plaintiff to suffer damages in the form of lost wages that he would have earned but for his wrongful termination.

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendants and that the defendants be required to provide all appropriate remedies under the FLSA, including unpaid wages due to the intentional, knowing and reckless employment practices of the defendants, back pay, front pay, liquidated damages, compensatory damages, interest, attorney's fees and costs and any other relief provided under the statutes and/or as the court deems appropriate, just and proper.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
220 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: July 7, 2022